FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 JUN 23 A 9:57

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **CHINUA SHEPPERSON,** | * | |
| Petitioner, | * | |
| v. | * | Civil Action No.: GJH-15-1686 |
| | | Related Criminal No.: 09-598-GJH-17 |
| **UNITED STATES OF AMERICA,** | * | |
| Respondent. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On June 5, 2015, Petitioner Chinua Shepperson's Motion to Vacate, Set Aside, or Correct his Sentence ("Motion to Vacate") was docketed in the above-captioned matter.[1] ECF No. 771. The Government has filed a response in opposition to the Motion to Vacate and Petitioner has filed his reply. No hearing is necessary to resolve the Motion. *See* 28 U.S.C. § 2255(b). For the reasons that follow, Petitioner's Motion will be denied.

**I. BACKGROUND**

On October 27, 2010, Petitioner was charged in a superseding indictment with multiple counts including conspiracy to participate in racketeering activity (Count 1), murder in aid of racketeering (Count 6), interference with commerce by robbery (Count 7), using and carrying a firearm during and in relation to a crime of violence (Count 8), and

---

[1] Petitioner has also filed a Motion for Leave Requesting Permission to File Exhibits. ECF No. 775. The Government has not responded to this Motion, and rather has substantively responded to the exhibits in its response in opposition to Petitioner's Motion to Vacate. *See* ECF No. 789. Accordingly, Petitioner's Motion for Leave will be granted. *See Mubang v. United States*, No. CIV.A. DKC 06-1838, 2011 WL 3511078, at *3 (D. Md. Aug. 9, 2011) (allowing petitioner to supplement record with evidence buttressing claims raised in initial § 2255 petition where Government did not oppose motion to supplement).

murder resulting from the use and carrying of a firearm during and in relation to a crime of violence (Count 9). *See* ECF No. 377; ECF No. 459-1.[2]

The case was tried before a jury in March 2011. At trial, the evidence consisted of, among other things, the testimony of several cooperators, including one by the name of Roddy E. Paredes, Jr. Paredes testified, in relevant part, that he and the Petitioner were members of a gang called the "Latin Kings," and that on or around April 25, 2008, they, along with other Latin King members including one named Erick Roman, concocted a plan to rob and kill an individual who had offered to loan them drugs—John Montoya. ECF No. 560 at 12, 29–30.[3] According to Paredes, he introduced Petitioner to Montoya as the buyer, and then Petitioner took out a gun—that Paredes had given him to use—and Paredes instructed Montoya to hand over the drugs and everything else in his pocket. *Id.* at 32, 34–35. After Montoya did so, Petitioner shot and killed him. *Id.* at 32.

Paredes further testified that, after the shooting, he threw Montoya's keys and cell phone into a creek, and, when the group reconvened at Parades' apartment, Roman took the drugs they stole from Montoya, while Petitioner took Parades' gun to get rid of it. *Id.* at 33, 52. Roman sold the drugs and gave the others some of the proceeds. *Id.* at 52.

On March 14, 2011, the jury returned a guilty verdict on each of the counts before it. ECF No. 485; *see also* ECF No. 519. Petitioner was sentenced to life imprisonment on Counts 1, 6, and 9, a concurrent 240-month term of imprisonment on Count 7, and a consecutive 120-month term of imprisonment on Count 8. ECF No. 519. Petitioner unsuccessfully appealed his sentence to the United States Court of Appeals for the Fourth

---

[2] Upon a joint motion to dismiss, multiple other counts of the superseding indictment were dismissed before trial. ECF No. 459.

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

Circuit, *see* ECF No. 743, and Petitioner's sentence became final on May 19, 2014 when the United States Supreme Court denied his petition for writ of certiorari, *Shepperson v. United States*, 134 S. Ct. 2314 (2014).

In his Motion to Vacate, Petitioner primarily argues that he is "factually innocent of counts including murder." ECF No. 771 at 3. Specifically, Petitioner contends that Roman has new information that could exculpate Petitioner. Petitioner further notes that his attorney refused to speak directly with Roman before trial because Roman was represented by counsel, ECF No. 771-1 at 2, and that his attorney informed him before trial that if Petitioner did not cooperate with the Government, he would be charged for Montoya's murder, ECF No. 771-1 at 1. In support of his Motion, Petitioner submitted his own affidavit in which he asserts his innocence, a handwritten letter from Roman to Petitioner, as well as reports from a private investigator who was hired to investigate Petitioner's "legal matters" and "to develop an investigative strategy aimed at generating new information regarding the murder of . . . Montoya." ECF No. 775-2 at 2; *see also* ECF No. 771-1; ECF No. 775-3; ECF No. 792.

In his letter, Roman asserts, among other things, that he has "new evidence in the case," specifically, "people that saw the murder and can testify to it in court . . . ." ECF No. 775-3 at 2. He further indicates that there were witnesses to the murder who "saw it all, and it was not [Petitioner] who they saw." *Id.* at 3. Roman suggests that Paredes lied at trial "to avoid a life sentence [or] maybe death row." *Id.* In the investigator's reports, however, Roman is described as a "fairly unscrupulous character who, at a minimum, suffers from delusions of grandeur and desires to be treated with greater regard than his stature requires," and that "much of what . . . Roman says about other witnesses and

3

vindicating information for [Petitioner] are either embellishments at least or bold-faced lies at most and finding third party corroboration in a subsequent investigation would be difficult, bordering on impossible." ECF No. 775-2 at 5. Nevertheless, according to the investigator, "[v]arious individuals with knowledge of this case [including] relatives, friends, associates and neighbors speculate that [Petitioner] did not murder . . . Montoya" but that "no one has been willing to share . . . the name of an actual witness for fear of safety or reprisal." ECF No. 792-1 at 1. The investigator further reported that "there are many with knowledge of this case who believe . . . Paredes lied in order to gain favorable treatment or reduced sentencing," *id.* at 2, a suspicion supported by the fact that Paredes testified at trial that he did not have a problem lying to the government agents if he stood to benefit. *See* ECF No. 560 at 110.

## II. DISCUSSION

In order to be entitled to relief under 28 U.S.C. § 2255, a petitioner must prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a); *see also United States v. Moore*, 993 F.2d 1541 (4th Cir. 1993) (unpublished) (citing *Vanater v. Boles*, 377 F.2d 898 (4th Cir. 1967)). A pro se petitioner is, of course, entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978). Where, however, a § 2255 petition, along with the files and records of the case, conclusively shows the petitioner is

not entitled to relief, a hearing on the motion is unnecessary and the claims raised therein may be dismissed summarily.[4] 28 U.S.C. § 2255(b).

Petitioner's principal claim is one of actual innocence. "The [United States] Supreme Court has never squarely held that actual innocence is a viable independent collateral claim." *Higgs v. United States*, 711 F. Supp. 2d 479, 501 (D. Md. 2010); *see also Herrera v. Collins*, 506 U.S. 390, 417, 113 S. Ct. 853 (1993) ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief . . . ."); *United States v. MacDonald*, 32 F. Supp. 3d 608, 705–06 (E.D.N.C. 2014) (emphasis in original) (footnote omitted) ("The United States Supreme Court has never explicitly recognized a freestanding actual innocence claim, although it has recognized the *possibility* of such a claim . . . ."). If any such freestanding claim of actual innocence exists, however, "the threshold showing would 'necessarily be extraordinarily high.'" *Higgs*, 711 F. Supp. 2d at 501 (quoting *Herrera*, 506 U.S. at 417); *see also Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (citations omitted) ("[Freestanding] [c]laims of actual innocence . . . should not

---

[4] The Government argues that Petitioner's Motion to Vacate is untimely because it was docketed beyond the one-year statute of limitations imposed by 28 U.S.C. § 2255(f). *See* ECF No. 789 at 5–7. Petitioner's Motion to Vacate is dated May 11, 2015—four days prior to the expiration of the one-year limitations period running from the date Petitioner's sentence became final. *See* 28 U.S.C. § 2255(f)(1); *see also* ECF No. 771 at 12. Under the "prison mailbox rule," the date that a document is deposited into the prison mailing system is considered the date of filing. *United States v. Perry*, 595 F. App'x 252, 253 n.1 (4th Cir. 2015) (citing *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379 (1988)). Absent any evidence to the contrary, the Court will presume that the date the Motion to Vacate was signed and dated was the date it was delivered to prison authorities. *See, e.g., Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir.) ("The burden is on the Government to prove the motion was delivered to prison authorities on a date other than the date the prisoner signed it."), *cert. denied*, 135 S. Ct. 241 (2014); *Smith v. United States*, No. CR ELH-08-0086, 2016 WL 1321218, at *1 n.2 (D. Md. Apr. 4, 2016) (assuming that petition under § 2255 was delivered to prison authorities on the date it was signed and dated). Although the Government contends that the prison mailbox rule should not apply because the envelope containing Petitioner's Motion was dated June 1, 2015, *see* ECF No. 789-1, the Government has not pointed to any evidence that Petitioner did not, in fact, submit his Motion to Vacate to prison authorities the date it was signed. *See e.g., Jeffries*, 748 F.3d at 1314 (noting that prison logs or other records constitute evidence that could contradict the signing date). Accordingly, the Court deems Petitioner's Motion to Vacate as timely filed.

be granted casually."). Thus, to be entitled to relief, the United States Court of Appeals for the Fourth Circuit has suggested that a petitioner "would at the very least be required to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, 'no rational trier of fact could [find] proof of guilt beyond a reasonable doubt.'" *Hunt v. McDade*, 205 F.3d 1333 (4th Cir. 2000) (unpublished) (quoting *Herrera*, 506 U.S. at 429 (White, J., concurring)).

Here, the evidence Petitioner has submitted in support of his Motion to Vacate is wholly generic and speculative. Petitioner contends that Roman has provided new information and that, had Roman testified at Petitioner's trial, the jury would have had reason to disbelieve Parades' testimony. *See* ECF No. 790 at 4. But Roman's vague assertions that other unspecified individuals "saw the murder and can testify . . . in court" that Petitioner was not the one who committed the murder, ECF No. 775-3 at 2–3, are insufficient for Petitioner to satisfy his burden on a freestanding claim of innocence. Additionally, although Petitioner's private investigator indicates that "[v]arious individuals with knowledge of this case . . . *speculate* that [Petitioner] did not murder . . . Montoya," ECF No. 792-1 at 1 (emphasis added), such speculation alone cannot support Petitioner's Motion to Vacate. Petitioner has not presented any evidence that would lead the Court to conclude that "'no rational trier of fact could [find] proof of guilt beyond a reasonable doubt.'" *MacDonald*, 32 F. Supp. 3d at 707 (quoting *Hunt*, 205 F.3d 1333).

To the extent Petition also seeks to raise a claim of ineffective assistance of counsel, his Motion to Vacate still must be denied. An ineffective assistance of counsel claim is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). "Pursuant to that test, to prevail on an ineffective assistance claim,

a petitioner must establish that (1) counsel's performance was deficient and (2) there is a reasonable probability that the deficiency prejudiced the defense." *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) (citing *Strickland*, 466 U.S. at 687, 694). To establish that counsel's performance was deficient, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* (citing *Strickland*, 466 U.S. at 688). However, "[c]ourts 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' in order to avoid 'the distorting effects of hindsight.'" *Id.* (quoting *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008)). To establish prejudice, a petitioner "must show that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Petitioner's only contention with respect to any deficiency on the part of his trial counsel is that his counsel refused to speak directly with Roman before trial because Roman was represented by counsel. *See* ECF No. 771-1 at 2. Pursuant to Rule 4.2 of the Maryland Lawyers' Rules of Professional Conduct, "in representing a client, a lawyer shall not communicate about the subject of the representation with a person who the lawyer knows is represented in the matter by another lawyer . . . ." Thus, Petitioner has failed to establish that his counsel's conduct "fell below an objective standard of reasonableness," *Merzbacher*, 706 F.3d at 363 (citation omitted), and, in any event, has not argued that any alleged deficiency would have changed the result of the jury's verdict.

### III. CERTIFICATE OF APPEALABILITY

"A Certificate of Appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C § 2253(c)(2). This

standard is satisfied by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims presented debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). This legal standard for issuance has not been met, and, accordingly, no certificate of appealability shall issue in this case. Denial of a certificate of appealability, however, does not prevent a petitioner from seeking pre-filing authorization for a successive motion under 28 U.S.C. § 2255.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence, ECF No. 771, is **DENIED**, and his Motion for Leave Requesting Permission to File Exhibits, ECF No. 775, is **GRANTED**. A separate Order follows.

Dated: June 23, 2016

GEORGE J. HAZEL
United States District Judge